## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 15-22499-Civ-COOKE/TORRES
### Case No. 15-22776-Civ-COOKE/TORRES

BRENT R. MARTINI,

      Plaintiff/Counter-Defendant,

vs.

HENRY ZELCER aka HENRY SOL
ZELCER; LEON ZELCER; BLUE
CONDOMINIUM ASSOCIATION, INC.;
UNKNOWN SPOUSE OF HENRY
ZELCER a/k/a HENRY SOL ZELCER;
UNKNOWN SPOUSE OF LEON ZELCER;
UKNOWN TENANT #1; UNKNOWN
TENANT #2; ANY AND ALL UNKNOWN
PARTIES CLAIMING BY, THROUGH,
UNDER AND AGAINST THE HEREIN
NAMED INDIVIDUAL DEFENDANTS
WHO ARE NOT KNOWN TO BE DEAD
OR ALIVE, WHETHER SAID UKNOWN
PARTIES MAY CLAIM AN INTEREST AS
SPOUSES, HEIRS, DEVISEES, GRANTEES,
OR OTHER CLAIMANTS,

      Defendants/Counter-Plaintiffs.

_____/

### ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

      This is an action to foreclose a mortgage on real property located at in Miami-Dade County, Florida (the "Property"). I have jurisdiction under 28 U.S.C. § 1332.

      Pending is Plaintiff Brent Martini's Motion for Summary Judgment. (ECF No. 35). For the reasons that follow, I **DENY** the motion.

### BACKGROUND

      This case arises out of a failed business relationship. Martini and Defendant Henry Zelcer formerly were partners in a company called Racing Sport Concepts, LLC ("RSC"). (ECF No. 34 ¶ 1). Martini, a California resident, managed RSC's finances. Zelcer ran RSC's day-to-day operations out of its Doral, Florida offices. (*Id.* ¶¶ 3-4).

Martini claims the business was not profitable. (*Id.* ¶ 5). He asserts that to keep RCS afloat, he injected additional capital into it each year from 2008 through 2012. (*Id.* ¶ 6). Purportedly to keep their equity shares in RSC equal, Martini and Zelcer divided whatever additional capital Martini contributed in two – they treated half as Martini's contribution and half as Zelcer's contribution. (*Id.* ¶¶ 8, 11, 13, 16). Martini also made several personal loans to Zelcer during the same period. (*Id.* ¶¶ 15, 22-23).

Zelcer signed annual promissory notes agreeing to repay Martini for his half of the contributions to RSC and for the personal loans. (*Id.* ¶ 8, 11, 13, 16). Martini claims that but for Zelcer's agreement to repay him, he would not have continued lending Zelcer money and contributing additional capital to RSC. (*Id.* ¶ 9).

In late 2012, the parties consolidated the various promissory notes into a single Master Promissory Note ("MPN"). (*Id.* ¶ 19). Under the MPN, Martini agreed to continue extending Zelcer credit, secured by a $391,000 mortgage on the Property.[1] (*Id.* ¶¶ 21, 27). The MPN required Zelcer to make monthly interest payments. (*Id.* ¶ 20). The principal and accrued interest would become payable immediately if Zelcer failed to make an interest payment for two consecutive months. (*Id.*).

In September 2013, Zelcer executed a second promissory note ("SPN") that included two personal loans totaling $75,000. (*Id.* ¶ 24). Zelcer agreed to be bound by the same terms and conditions contained in the MPN. (*Id.* ¶ 26).

Zelcer made three interest-only payments to Martini in 2014, the last of which was in November of that year. (*Id.* ¶¶ 28, 32, 33). He has not made any payments since. (*Id.* ¶ 34).

In December 2014, Zelcer executed a quit-claim deed to convey his interest in the Property to Leon Zelcer.[2] (ECF No. 1 ¶ 15). Leon Zelcer is now the sole owner of the Property. (*Id.* ¶ 16).

Martini alleges Zelcer owes him $466,000 (the principal on the MPN and SPN) together with interest, late charges, and the costs of collection including title search expenses. (*Id.* ¶ 35).

---

[1] Zelcer later amended the mortgage to increase the total secured principal to $441,000. (ECF No. 34 ¶ 23).

[2] Henry Zelcer and Leon Zelcer originally each held a half interest in the Property. (ECF 34 ¶ 6.

Zelcer disputes that amount, arguing, *inter alia*, that he owes less because Martini took distributions totaling $329,903 from RSC. (ECF No. 36 at 1-2). Zelcer asserts that, as an equal partner in RSC, 50% of those distributions belonged to him. (ECF No. 36 at 3-5). Zelcer also claims (1) that Martini received $40,000 on behalf of RSC to settle a lawsuit unrelated to this dispute, half of which should have gone to Zelcer, and (2) that Zelcer should have received the benefit of claiming 50% of RSC's losses on his tax return, which he was unable to do because Martini allocated all of the losses to himself. (*Id.* at 5-9). He argues that these amounts all should have reduced his obligations for capital contributions, and therefore his debt.

Notwithstanding the parties' disagreement about the amount owed, Martini asks that I grant him summary judgment and order foreclosure of the mortgage on the Property. (ECF No. 45). Specifically, he requests that I: (1) determine the sum of money due and payable to him; (2) find that sum to be a lien on the Property; (3) order that the lien be foreclosed and the Property sold to satisfy the lien; and (4) find that the interests in the Property of any and all named Defendants are junior and subservient to the lien. (ECF No. 1 at 5-6).

## STANDARD OF REVIEW

Summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)) (internal quotations omitted); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999).  Thus, the entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id*.

Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted).

"A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon*, 196 F.3d at 1358. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Abbes v. Embraer Servs., Inc.*, 195 F. App'x 898, 899-900 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)).

When deciding whether summary judgment is appropriate, "the evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party." *Bush v. Houston County Commission*, 414 F. App'x 264, 266 (11th Cir. 2011).

## ANALYSIS

There does not appear to be a dispute that Zelcer owes some amount of money to Martini under the MPN and SPN. The question is exactly how much. Viewing the record in the light most favorable to the Defendants, I find that multiple questions of fact preclude summary judgment in Martini's favor.

As a threshold matter, Martini has not produced the original notes. He cannot prove he is entitled to relief without submitting them into evidence. *See, e.g.*, *Dasma Inv., LLC v. Realty Assoc. Fund III, L.P.*, 459 F. Supp. 1294, 1302 (S.D. Fla. 2006) ("A party suing on a promissory note – whether just on the note itself or together with a claim to foreclose on a mortgage securing the note – must . . . be in possession of the original of the note or reestablish the note pursuant to Fla. Stat. § 673.3091. If it is not in possession of the original note, and cannot reestablish it, the party simply may not prevail in an action on the note."); *see also* Fla. Stat. § 90.953 (with respect to negotiable instruments, a copy or duplicate is *not* admissible to the same extent as the original).

Moreover, Martini seeks interest, late charges, and costs of collection in addition to the principal on the notes. There is insufficient evidence to quantify those amounts. For

example, the MPN specifies a variable interest rate equal to the six-moth LIBOR plus 4.38%, compounded annually. (ECF No. 1 at 7). The record as it stands now would not enable me to make that calculation.

Finally, there is a question of fact as to whether fair consideration supported the MPN. *See In re Chase & Sanborn Corp.*, 904 F.2d 588, 593 (11th Cir. 1990) ("It has long been established that [w]hether fair consideration has been given for a transfer is largely a question of fact, as to which considerable latitude must be allowed to the trier of the facts.") (internal quotation marks omitted). Although it appears there is no dispute that Martini made contributions to RSC on Zelcer's behalf totaling $391,000, there also appears to be no dispute that Martini (1) took distributions from RSC totaling $329,903, (2) kept for himself a $40,000 settlement he received on RSC's behalf, and (3) allocated RSC's tax losses to himself to reduce his tax liability. Whether and to what extent those actions diminished the value of consideration Zelcer received in exchange for signing the MPN is a question for the jury.[3] *See Hill v. Jones*, 2004 WL 5694988, at *3 (M.D. Fla. Nov. 4, 2004) (whether reasonably equivalent value has been given is a question of fact).

For all these reasons, summary judgment in Martini's favor is not warranted.

## CONCLUSION

It is, therefore, **ORDERED** and **ADJUDGED** that Plaintiff's Motion for Summary Judgment (ECF No. 35) is **DENIED**.

---

[3] One important fact the jury will need to determine is whether Zelcer knew, or at least should have known, that Martini was taking these actions. *See Hurner v. Mut. Bankers Corp.*, 140 Fla. 435, 438 (1939) ("One who gives a note in renewal of another note, with knowledge at the time of a partial failure of the consideration for the original note, or false representations by the payee, etc., waives such defense, and cannot set it up to defeat a recovery on the renewal note. And where one giving such renewal note either had knowledge of such facts and circumstances, or by the exercise of ordinary diligence could have discovered them and ascertained his rights, it became his duty to make such inquiry and investigation before executing the renewal note, and if he fails so to do he is as much bound as if he had actual knowledge thereof.").

**DONE** and **ORDERED** in chambers at Miami, Florida, this  27th day of September 2016.

*Marcia G. Cooke*

MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of Record*